## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UHS OF DELAWARE, INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No. <u>1:12-cv-00485</u>** |
| **v.** | ) |
| | ) |
| **UNITED HEALTH SERVICES, INC.,** | ) **The Honorable Christopher** |
| *et al.* | ) **C. Conner** |
| **Defendants.** | ) |

## <u>PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)</u>

## **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ………………………………..…..……………… i-ii

TABLE OF AUTHORITIES………………………….……….............. iii-iv

I.    PROCEDURAL HISTORY……………………………………….. 2-3

II.   STATEMENT OF FACTS………………………………………… 3-8

III.  STATEMENT OF QUESTIONS INVOLVED……………………… 8-9

IV.   LEGAL STANDARD FOR A MOTION TO DISMISS FOR LACK OF
      PERSONAL JURISDICTION….…………………………………. 9-11

V.    ARGUMENT……………….………………………………….... 11-35

      A.    UNITED CONTROLS THE UNIFIED DEFENDANTS
            SUCH THAT UNITED IS THE "ALTER EGO" OF THE
            DEFENDANTS……………………………………………... 13-18

      B.    DEFENDANTS PURPOSEFULLY DIRECT THEIR
            INFRINGEMENT OF THE UHS MARKS TO PENNSYLVANIA
            PATIENTS AND ARE THEREFORE SUBJECT TO SPECIFIC
            JURISDICTION……………….…………………………. 18-19

            1.    UNITED'S WEBSITE IS COMMERCIALLY INTERACTIVE
                  AND SPECIFICALLY TARGETS PENNSYLVANIA
                  RESIDENTS, SUCH THAT PERSONAL JURISDICTION
                  MAY BE PROPERLY EXCERCISED OVER UNITED. 19-24

            2.    EACH DEFENDANT'S PURPOSEFULLY DIRECTED
                  CONTACTS WITH PENNSYLVANIA ARE SUFFICIENT
                  TO SUBJECT ALL DEFENDANTS TO JURISDICTION
                  WITHIN THIS FORUM………..………………………….. 24-30

     C.     DEFENDANTS' CONTACTS WITH PENNSYLVANIA ARE
             CONTINUOUS AND SYSTEMATIC, SUCH THAT GENERAL
             PERSONAL JURISDICTION IS PROPER IN
             PENNSYLVANIA………………………………….…….……  30-31

     D.     ASSERTING PERSONAL JURISDICTION OVER DEFENDANTS
             IN PENNSYLVANIA COMPORTS WITH TRADITIONAL
             NOTIONS OF FAIR PLAY AND SUBSTANTIAL
             JUSTICE……………………………….………………………  31-33

VI.     IN THE ALTERNATIVE, PLAINTIFF SHOULD BE ALLOWED
             JURISDICTIONAL DISCOVERY…………………..……………..  33-35

VII.    CONCLUSION…..………………………………………………...  35-36

CERTIFICATE OF WORD COUNT…………..…………...……………..  37

CERTIFICATE OF SERVICE…………………………..………………...  38-39

# TABLE OF AUTHORITIES

## CASES

*Aerolink Int'l v. Colonial Parking*, No. 96-1130,
    1996 U.S. Dist. LEXIS 12430 (E.D. Pa. Aug. 21, 1996) ……………………… 33

*Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*,
    87 F.3d 413 (10th Cir. 1996) …………………………………………………….. 19

*Argentum Med., LLC v. Noble Biomaterials*, No. 3:08-CV-1305,
    2009 U.S. Dist. LEXIS 43845 (M.D. Pa. May 21, 2009) ……………………... 9

*Brownstein v. New York Univ. Medical Ctr.*, No. 94-907,
    1994 U.S. Dist. LEXIS 16760 (D.N.J. Nov. 22, 1994) ………………………. 28

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, (1985) ………………………… 32

*Chocolate Confectionary Antitrust Litig.*,
    674 F. Supp. 2d 580 (M.D. Pa. 2009) ……………………………………………. 10,14

*Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208 (3d Cir. 1984) ……... 10,19

*Enter. Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co.*,
    735 F. Supp. 2d 277 (W.D. Pa. 2010) ……………………………………………. 10,13

*Hershey Co. v. Pagosa Candy Co.*, 1:07-CV-1363,
    2008 U.S. Dist. LEXIS 29410 (M.D. Pa. Apr. 10, 2008) ……………………... 20

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ……………………………... 10

*LG Elecs. USA, Inc. v. Seamless Interactive, LLC*, No. 9-CV-5178,
    2010 U.S. Dist. LEXIS 78157 (D.N.J. Aug. 2, 2010) …………………………. 34

*Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324 (3d Cir. 2009) …………… 35

*Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93 (3d Cir. 2004) …………………… 11,32

*Musser's Inc. v. United States*, No. 10-4355,
    2011 U.S. Dist. LEXIS 109629 (E.D. Pa. Sept. 26, 2011) …………………… 23

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007) …………..   19

*Schwilm v. Holbrook*,  661 F.2d 12 (3d Cir. 1981) …………………………..   28

*Shouse ex rel. Paxon v. Nat'l Corrective Group, Inc.*, No. 3:10-CV-0175,
   2010 U.S. Dist. LEXIS 126108 (M.D. Pa. Nov. 30, 2010) …………………   13

*Simeone v. Bombardier-Rotax GMBH*, 360 F. Supp. 2d 665 (E.D. Pa. 2005) …..   15

*Southco, Inc. v. Matdan Am. Corp.*, No. 98-5425,
   1998 U.S. Dist. LEXIS 19416 (E.D. Pa. Dec. 8, 1998) ………………………   32

*Surface Preparation Techs. v. Jamaco Indus.*, No. 1:11-CV-1978,
   2012 U.S. Dist. LEXIS 50146 (M.D. Pa. Apr. 10, 2012) ……………………   20,30

*Thompson v. Wyrks Tool & Mach. Ltd.*, No. 09-581,
   2009 U.S. Dist. LEXIS 117479 (W.D. Pa. Nov. 13, 2009) …………………...   19,35

*Toys R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446 (3d Cir. 2003) ………………   9,20

*TRE Servs. v. United States Bellows, Inc.*, No. 2:12-cv-00663,
   2012 U.S. Dist. LEXIS 96731 (W.D. Pa. July 12, 2012) ……………………...   21,31

*Watson v. Blessey Marine Servs.*, No. 11-cv-1252,
   2011 U.S. Dist. LEXIS 135181 (W.D. Pa. Nov. 23, 2011) ……………………   19,23

*World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980) ……...............   10

*Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997) ………...   20

Plaintiff UHS of Delaware, Inc. ("UHS" or "Plaintiff") hereby opposes the motion to dismiss by Defendants United Health Services, Inc. ("United"), United Health Services Hospitals, Inc. ("UHSHI"), Delaware Valley Hospital, Inc. ("DVHI"), Twin Tier Home Health, Inc. ("TTHHI"), Ideal Senior Living Center, Inc. ("ISLCI"), Ideal Senior Living Center Housing Corporation ("ISLCHC"), United Medical Associates, P.C. ("UMA"), and United Health Services Foundation, Inc. ("UHSFI") (collectively "Defendants") for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Motion").

Through their own public statements, Defendants admit that they purposefully unified into one regional health system that "speaks with one voice", and directs advertising at, and solicits patients and donations from Pennsylvania residents. United further admits that, since the rebranding effort in 2010, it has become a dominant "umbrella corporation" that exerts direct control over Defendants' marketing efforts, including the use of Plaintiff's UHS mark to target Pennsylvania residents.   One of United's subsidiaries, Professional Home Care, Inc. ("PHCI"), is licensed to do business in Pennsylvania and physically enters the Commonwealth to treat Pennsylvania residents.   Cerra Decl. ¶6.  Notwithstanding these facts, through their present Motion and PHCI's separate motion to dismiss

pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants seek to distance themselves from each other, and minimize their role as a "regional" health system to argue that not one of them is subject to jurisdiction and liable for infringement. But having decided to expand their operations into Pennsylvania, United and the other Defendants now have sufficient contacts that they are subject to personal jurisdiction within this forum.  The Motion must be denied.

## I.   PROCEDURAL HISTORY

UHS filed its original complaint in this case on March 16, 2012, and subsequently filed the First Amended Complaint on April 26, 2012.  [Dkt. 1, 9]. UHS thereafter sought and obtained leave to file the Second Amended Complaint (hereinafter "Complaint").  [Dkt. 14].  The Complaint was filed on June 6, 2012. [Dkt. 15].

The Complaint names nine defendants, including United.  On July 3, 2012, United and the remaining Defendants *other than* PHCI filed the Motion and corresponding brief ("Brief"), seeking to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) on grounds that this Court lacks personal jurisdiction over the Defendant movants.  [Dkt. 23].  On the same day, defendant PHCI filed a motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state a claim against PHCI.  [Dkt. 24]. UHS responds separately to PHCI's Motion.

On July 19, 2012, UHS filed an unopposed motion for extension of time to respond to these two motions. [Dkt. 29]. This Court granted UHS's motion and UHS's deadline to respond to the Defendants' motions is August 10, 2012. [Dkt. 30]. UHS timely responds here to PHCI's Motion.

## II.    STATEMENT OF FACTS

The simple issue before this Court involves Plaintiff's unfair competition and trademark infringement claims against United's healthcare system for its decision to undergo a recent system-wide rebranding effort under trademarks owned by UHS and to target Pennsylvania customers under those trademarks. *See generally*, Sec. Am. Compl. Plaintiff UHS manages acute care hospitals, behavioral health facilities, and ambulatory centers across the United States and serves patients throughout the country, including those from New York and in central and northern Pennsylvania. *See* Botak Decl. ¶4. Headquartered in King of Prussia, Pennsylvania, UHS is a wholly owned subsidiary of Universal Health Services, Inc., one of the nation's largest and most respected healthcare management companies. *See id.* at ¶3. UHS is the owner and successor in interest to the "UHS" trademarks at issue, which were originally owned by its parent, Universal Health Services, Inc. *See id.* at ¶¶5-9. Over the course of more than thirty years, UHS and its predecessors in interest have invested substantial time, effort, and money in the marketing, advertising, and promotion of its distinctive

3

and well-known series of "UHS" trademarks, such that its unique services have become widely recognized as emanating from UHS and as maintaining only the highest quality standards within Pennsylvania, the region, and the country at large. *See* C. Botak Decl. ¶14.

United is the parent corporation of the Defendants' healthcare system, which is headquartered just beyond the New York/Pennsylvania border, in Binghamton, New York.  Gomulka Decl. ¶¶4-5.  Defendant United owns all of the remaining Defendants except for UMA and UHSFI.  Br. at 5-9.  In United's 2010 990 tax form, United lists itself as the direct controlling entity for all of the following Defendants: PHCI, UHSHI, ISLCI, ISLCHC, DVHI, and TTHHI.  (Dickinson Decl. Exh. 25).

At least 5% of patients treated through United's healthcare system are Pennsylvania residents.  Gomulka Decl. ¶10.  PHCI, United's home-health subsidiary regularly enters the Commonwealth to do business, and is registered to do business in Pennsylvania as well.  Cerra Decl. ¶6.  PHCI operates in Pennsylvania under United's newly adopted "UHS" marks.  *See, e.g.*, Website advertising PHCI as "UHS Home Care."  United advertises services under the "UHS" marks that are identical to services offered by Plaintiff's Pennsylvania facilities, including but not limited to inpatient and outpatient behavioral healthcare services to child, adolescent, adult, and geriatric residents of Pennsylvania

communities.  *See* Botak Decl. ¶19.

According to United itself, as part of a three year effort, United transformed its health system "from a loose collection of related organizations into a **tightly integrated health care system**."  *See* Dickinson Decl. Exh. 4, p. 2 (emphasis added).  They further "aligned [their] members more closely than ever before, **with shared ownership** and teamwork to make the system more cohesive."  *Id.* (emphasis added).  And by "**adopting a new UHS logo**," United's healthcare system completed its transformation to one in which its slogan became "***We are UHS***."  *Id.* (emphasis added).  United further emphasizes that "at every level of the system, there is evidence of subsidiary members, departments, and individuals working more closely together," including the "convergence" of two facilities, the "unification of many of our ancillary services, the collaboration of our systemwide nursing council," such that "we all answer the phone 'UHS.'"  Dickinson Decl. Exh. 4, p. 3.

As part of this unification process, United instituted a common rebranding of *all* Defendants' services.  *See* United Annual Report, United Services Web Image. Since this rebranding effort in 2010, the *entire* United health system uses a uniform "UHS" logo and "UHS" trademark for all of its entities.  *See, e.g.*, Dickinson Decl. Exhs. 1 - 5.  The Defendants use these "UHS" trademarks and logos subject to permission granted by United.  Gomulka Decl. ¶7.  Further, United shares common

directors with the following Defendants: PHCI, UHSHI, DVHI, TTHHI, ISLCI, ISLCHC, and UHSFI.  *See* Dickinson Exh. 26.  Not only does United also share management personnel with PHCI TTHHI, DVHI, and ISLCI,[1] but it shares employees with at least the following entities as well: PHCI, TTHHI, UHSHI, and UMA.[2]

United also provides its website, www.uhs.net ("United's Website"), to the remaining Defendants as a means to advertise their services, communicate with patients, and complete transactions with those patients, which is demonstrated through the following examples of the website's interactive features:

(a) online bill pay service for medical services;

(b) online donations service for UHSFI;

(c) online service to request direct phone calls or e-mails from registered nurses for healthcare-related questions;

(d) online service to request a healthcare appointment;

(e) online service to order prescription refills;

(f) online service to request medical records;

(g) online access to patient intake forms;

(h) online service to send cards to current patients;

---

[1] *See* Cerra Decl. ¶4. Gomulka Decl. ¶2; Dickinson Decl. Exhs. 9, 29.
[2] *See* Cerra Decl. ¶2; Boyd Decl. ¶2; Sec. Am. Comp. ¶12(d); Dickinson Decl. Exh. 20, 29.

(i) online service to contact United;

(j) online service to request physical copies of physician directories; and

(k) online access to financial assistance forms.[3]

Certain of these services are directed, and limited, to only Pennsylvania and New York residents. For example, on United's Website, it advertises a "Nurse Direct" service that is available only to certain "counties of New York and Pennsylvania." Dickinson Decl. Exh. 7. The website advertises a toll-free number for Tioga County Pennsylvania residents to call a registered nurse within United's health system for detailed health information, physician referrals, health program information, among other topics. *Id.* Further, Tioga County Pennsylvania residents may request that a nurse from United's health system *call into the Commonwealth* or e-mail that patient to discuss the patient's health-related information as well. *Id.*; Dickinson Decl. Exh. 27.

On the United Website, United also boasts that its healthcare system maintains a "patient care coverage area that encompasses all of Broome County and much of Central New York **and Northcentral Pennsylvania**." Dickinson Decl. Exh. 6. (emphasis added). United also advertises in Pennsylvania through

---

[3] *(a)* Dickinson Decl. Exh. 10; Boyd Decl. ¶3(b); *(b)* Boyd Decl. 3(c); *(c)* Dickinson Decl. Exh. 27; *(d)* Dickinson Decl. Exhs. 16-17; *(e)* Dickinson Decl. Exhs. 16-17; *(f)* Dickinson Decl. Exhs. 16-17; *(g)* Boyd Decl. ¶3(a); Dickinson Decl. Exh. 13; *(h)* Boyd Decl. ¶3(d); *(i)* Dickinson Decl. Exh. 14; *(j)* Dickinson Decl. Exh. 18; *(k)* Dickinson Decl. Exh. 12.

other media as well.  For example, United[4] sponsors advertisements and television "Docs on Call" segments with WBNG-TV Action News, which "is the CBS affiliate for the Binghamton Television Market which serves the Southern Tier of New York State and the Northern Tier of Pennsylvania."  Dickinson Decl. Exhs. 21 - 24, 28.

Thus, as a result of its 2010 rebranding effort, United and the remaining Defendants have decided to advertise themselves to New York and Pennsylvania as a "regional provider"[5] of healthcare services that is "unified" and "speaks with one voice, 'UHS.'"  Dickinson Decl. Exh. 4.  Plaintiff UHS therefore comes before this Court requesting relief from the Defendants' recent unification, rebranding, and direct targeting of Pennsylvania patients using Plaintiff's longstanding "UHS" marks.  To the extent that the facts presented in Defendants' Brief conflict with those presented herein, UHS disputes those facts.

## III.   <u>STATEMENT OF QUESTIONS INVOLVED</u>

ARE THE DEFENDANTS SUBJECT TO PERSONAL JURISDICTION?

---

[4] The television segments appear to be advertisements from United, as the language in the general information page applies to the entire health system, not merely UHSHI or any other individual Defendant.

[5] Since the filing of the present action, United has posted its "2011 Annual Report."  In a desperate attempt to avoid jurisdiction and minimize its prior statements boasting about its expanse throughout the region, it has crafted new language to promote a more limited focus to New York.  *Compare, e.g.*, Dickinson Decl. Exh. 4 (2010 Annual Report uses the terms "Southern Tier" and "New York" a total of five times) *with* Dickinson Decl. Exh. 30 (2011 Annual Report uses the terms "Southern Tier" and "New York" a total of twenty-one times).

Answer: Yes

IN THE ALTERNATIVE, IS PLAINTIFF ENTITLED TO JURISDICTIONAL DISCOVERY?

Answer: Yes

## IV.   LEGAL STANDARD FOR A MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

When considering a motion to dismiss for lack of personal jurisdiction, a court must accept the plaintiff's allegations as true, and construe disputed facts in the plaintiff's favor. *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003) (citation omitted).   A plaintiff may meet its burden to demonstrate jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." *Argentum Med., LLC v. Noble Biomaterials*, No. 3:08-CV-1305, 2009 U.S. Dist. LEXIS 43845, at *6-7 (M.D. Pa. May 21, 2009) (citations omitted).[6]  As jurisdiction is an inherently factual matter, a plaintiff may support its position with "sworn affidavits or other competent evidence," in addition to its pleading. *Id.*

Under the Pennsylvania long-arm statute, personal jurisdiction may be based on the most minimum contact with this Commonwealth allowed under the

---

[6] Pursuant to Rule 7.8 of the Local Rules of the U.S. District Court for the Middle District of Pennsylvania, copies of unpublished opinions cited herein are attached at Exhibit 1.

Constitution of the United States."  42 Pa. Cons. Stat. § 5322(b) (2012); *See Dollar Sav. Bank v. First Sec. Bank of Utah*, 746 F.2d 208, 211 (3d Cir. 1984).  Courts may exercise personal jurisdiction over a nonresident defendant if the defendant has "minimum contacts" with the forum state in order that "the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Enter. Rent-A-Car Wage & Hour Empl. Practices Litig. v. Enter. Rent-A-Car Co.*, 735 F. Supp. 2d 277, 308 (W.D. Pa. 2010).

Personal jurisdiction may be established either through specific or general jurisdiction.  With specific jurisdiction, a court may "hear claims that arise from a defendant's contacts with the forum where the court sits."  *In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 596 (M.D. Pa. 2009) (citation omitted).  In the alternative, a court may possess general jurisdiction over a defendant when the defendant "possesses systematic and continuous contacts with the forum regardless of whether the claim resulted from the defendant's forum-related activities."  *Id.*  at 597 (citations omitted).  In both cases, personal jurisdiction must also not offend "traditional notions of fair play and substantial justice."  *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted).  In this case, this Court possesses both specific *and* general jurisdiction over the Defendants, as each consistently advertises and/or provides

hospital and healthcare-related services to Pennsylvania residents.

Where, as here, the plaintiff has successfully demonstrated these requisite contacts, the "defendant[s] must subsequently 'present a compelling case that … renders jurisdiction unreasonable." *Miller Yacht Sales, Inc. v. Smith*, 384 F. 3d 93, 97 (3d Cir. 2004) (citations omitted). Here, despite Defendants' attempts at misdirection and their individual denial of any responsibility for the acts of the collective whole, each of the Defendants do in fact have more than sufficient contacts with Pennsylvania such that jurisdiction is proper in this forum.

## V.   **ARGUMENT**

The case before this Court involves two large, competing healthcare systems, both of which advertise and provide identical services to citizens of Pennsylvania under the identical "UHS" mark. Founded in 1978, UHS and its predecessors in interest have built substantial goodwill in its UHS trademarks through decades of investment, both within its home state of Pennsylvania and throughout the United States at large. Botak Decl. ¶3, 11, 14. United's unified regional health system is headquartered just beyond the New York/Pennsylvania border, in Binghamton, New York. Gomulka Decl. ¶5. This case is the result of United's recent campaign to unify its healthcare providers under Plaintiff's name and trademark in order to trade off of UHS's extensive goodwill, expanding its reach into the Commonwealth.

Defendants' claim that UHS has no basis for asserting jurisdiction ignores the uncontroverted facts that:

(a.)  all Defendants operate in a united health system under the UHS trademark that is the subject of Plaintiff's claims;

(b.)  one United subsidiary, PHCI, is a registered Pennsylvania business that physically enters the state on a regular basis;

(c.)  certain of the Defendants consistently treat Pennsylvania residents;

(d.)  United offers its Nurse Direct services at United's Website, through which a nurse contacts individuals in their homes regarding referrals, medical information, or health concerns, *only* to certain *Pennsylvania* and New York residents;

(e.)  at least 5% of the patients treated by United's health system travel from Pennsylvania for treatment;

(f.)  United is the parent of all entities except UMA and UHSFI; and

(g.)  defendants are "regional" providers who are targeting Pennsylvania residents with advertising and promotion—in part through their joint website owned by United.  *See* Section V.B., *infra*.

Despite their arguments to the contrary, establishing personal jurisdiction over Defendants in Pennsylvania does not mean they would be subject to jurisdiction in every state.  *See* Br. at 24-26.  Rather, it is each Defendant's unique

and extensive relationship with Pennsylvania that allows this state to exercise personal jurisdiction over them.  Defendants' efforts to target, solicit, and service Pennsylvania residents are sufficient such that it is reasonable for the Defendants to expect to submit to personal jurisdiction.

Moreover, jurisdiction over Defendants is fair and reasonable given their actions directed at Pennsylvania, and the effect of their marketing on Pennsylvania residents.  As the venue for this case is in close proximity to Defendants' headquarters, it presents no burden to Defendants and their witnesses.

## A.   UNITED CONTROLS THE UNIFIED DEFENDANTS SUCH THAT UNITED IS THE "ALTER EGO" OF THE DEFENDANTS.

During its 2010 rebranding effort, United orchestrated an entire infringing marketing campaign that would both provide it with greater control over each Defendant health provider, as well as enhance their market share by trading off of UHS's nationwide recognition for providing the highest quality healthcare services for over a generation.   This Court has held that it may exercise personal jurisdiction over a non-forum parent of a subsidiary company when the subsidiary is merely the alter ego of the parent.  *Shouse ex rel. Paxon v. Nat'l Corrective Group, Inc.*, No. 3:10-CV-0175, 2010 U.S. Dist. LEXIS 126108, at *19-20 (M.D. Pa. Nov. 30, 2010).  The alter ego theory centers on control, and is "less stringent" than the traditional piercing the corporate veil analysis. *Enter. Rent-A-Car*, 735 F.

Supp. 2d at 319 (W.D. Pa. 2010) (citations omitted). [7]

According to this Court, the proper factors for establishing jurisdiction under an alter-ego theory are:

(a) the parent owns all or a significant majority of the subsidiary's stock;

(b) commonality of officers or directors exists between the two corporations;

(c) the group possesses a unified marketing image, including common branding of products;

(d) corporate insignias, trademarks, and logos are uniform across corporate boundaries;

(e) group members share employees;

(f) the parent has integrated its sales and distribution systems with those of its subsidiaries;

(g) the corporations exchange or share managerial or supervisory personnel;

(h) the subsidiary performs business functions that would ordinarily be handled by a parent corporation;

(i) the parent uses the subsidiary as a marketing division or as an exclusive distributor; and

(j) the parent exercises control or provides instruction to the subsidiary's officers and directors.

*In re Chocolate Confectionary Antitrust Litig.*, 674 F. Supp. 2d 580, 598 (M.D. Pa. 2009).   These factors are used "as a non-exclusive guide to help resolve the broader issue of whether the companies have a single functional and organic

---

[7] Defendants misapply *Intersteel* to support their argument for a higher standard for alter-ego theory. *See* Br. pp. 13 – 19.  Defendants emphasize factors such as "siphoning funds," "non-payment of dividends," "absence of corporate records," and "insolvency of debtor corporation," that are not considered in the Third Circuit's alter ego analysis for jurisdictional purposes. *See Wheeling-Pittsburgh Steel Corp. v. Intersteel, Inc*., 758 F. Supp. 1054, 1056-1059 (W.D. Pa. 1990) (discussing a non-jurisdictional analysis for alter-ego theory).

identity." *Simeone v. Bombardier-Rotax GMBH*, 360 F. Supp. 2d 665, 676 (E.D. Pa. 2005) (citations omitted). Defendants omit a number of facts to argue that their healthcare system is a mere collection of independent "affiliates." *See* Br. At 5. Rather, as United itself has acknowledged, the Defendants are a "tightly integrated health system," over which United maintains strict control. *See* Dickinson Decl. Exh. 4, p. 2.

Particularly as the Defendants' relationships relate to Plaintiff's claims of trademark infringement and unfair competition, the Defendants are, and project themselves as, a single entity. According to United itself, United transformed its health system "from a loose collection of related organizations into a **tightly integrated health care system**." *See* Dickinson Decl. Exh. 4, p. 2 (emphasis added). They further "aligned [their] members more closely than ever before, **with shared ownership** and teamwork to make the system more cohesive." *Id.* (emphasis added). And by "**adopting a new UHS logo**," United's healthcare system completed its transformation to one in which its slogan became "***We are UHS***." *Id.* (emphasis added).

An analysis of this Court's alter-ego factors, as presented in *Chocolate Confectionary*, demonstrates that not only is United merely the alter ego of PHCI, which regularly does business within the Commonwealth using the infringing UHS marks, but it is the alter ego of the remaining Defendants as well. United owns all

of the remaining Defendants except for UMA and UHSFI.  Br. at 5-9.  United is also the parent corporation of the Defendants' healthcare system and in its 2010 990 tax form, United lists itself as the direct controlling entity for all of the following Defendants: PHCI, UHSHI, ISLCI, ISLCHC, DVHI, and TTHHI. (Gomulka Decl. ¶4; Dickinson Decl. Exh. 25).

United also shares common directors with the following Defendants: PHCI, UHSHI, DVHI, TTHHI, ISLCI, ISLCHC, and UHSFI.  *See* Dickinson Exh. 26. Further, not only does United share management personnel with PHCI TTHHI, DVHI, and ISLCI,[8] but it also shares employees with at least the following entities: PHCI, TTHHI, UHSHI, and UMA.[9]  Thus, it is apparent that with the placement of key personnel within each separate entity, from the top-down, United maintains its tight control over the activities of the other Defendants.

United has further integrated its sales with several Defendants by way of providing a payment system as a part of United's own website functionality.  The following entities have been integrated into United's payment system: UHSHI, DVHI, UMA, and USHFI.  *See* Boyd Decl. ¶3(b); Dickinson Decl. Exh. 10.

However, the extent of United's dominance is not limited to placing its own personnel within each organization.  In order to create tighter control over the

---

[8] *See* Cerra Decl. ¶4; Gomulka Decl. ¶2; Dickinson Decl. Exhs. 9, 29.
[9] *See* Cerra Decl. ¶2; Sec. Am. Comp. ¶12(d); Dickinson Decl. Exh. 20 (a screenshot of a profile for a Mr. Michael McNally, who self-identifies his employment at United, UHSHI, and UMA).

16

members of its healthcare system, United rebranded the entire health system in 2010, including common branding of *all* Defendants' services. *See* United Annual Report; United Services Web Image. Since its rebranding effort in 2010, the *entire* United health system uses the uniform, infringing "UHS" logo and "UHS" trademark for all of its entities. *See* United Annual Report, United Rebranding Issue, and United Sign Images. The Defendants use these infringing UHS trademarks and logos subject to permission granted by United. Gomulka Decl. ¶7.

When the Defendants' relationships are thus viewed as a whole, the evidence reflects that they are intentionally structured as a "tightly integrated health system" that recently began "speaking with one voice: We are UHS." Dickinson Decl. Exh 4. Despite these facts, Defendants argue that United, the parent corporation for the entire health system, merely provides access to its website and permission to use the UHS trademark. *See* Gulmulka Decl. & Brief. However, as demonstrated *supra*, when the alter-ego factors are properly weighed, it becomes clear that United is not merely a "passive parent" of the remaining Defendants.

In fact, as United states on its website: "United is an umbrella organization that oversees" the Defendants' in its health system. Dickinson Decl. Exh. 6. United further emphasizes that "at every level of the system, there is evidence of subsidiary members, departments, and individuals working more closely together,"

including the "convergence" of two facilities, the "unification of many of our ancillary services, the collaboration of our systemwide nursing council," and that "we all answer the phone 'UHS.'"" Dickinson Decl. Exh. 4, p. 3.

Especially as it relates to the trademark claims before this Court, United maintains such control over the Defendants that despite the separate corporate formalities, the Defendants act, and portray themselves to consumers, as one entity, which is directly controlled by United.

Therefore, as the issue before this Court is the United healthcare system's decision to completely rebrand its services to target Pennsylvania patients using infringing marks, and as United maintains such tight control over the Defendants' advertising and marketing image, logos and trademarks, this Court should find for purpose of combining jurisdictional contacts, United is the alter ego of the remaining Defendants over which it exerts such domination and control.

**B.   DEFENDANTS PURPOSEFULLY DIRECT THEIR INFRINGMENT OF THE UHS MARKS TO PENNSYLVANIA PATIENTS AND ARE <u>THEREFORE SUBJECT TO SPECIFIC JURISDICTION.</u>**

Each of the Defendants participate in United's marketing and advertising scheme that directly targets Pennsylvania residents with their infringing UHS marks and logos, such that this Court may exercise personal jurisdiction over all Defendants. The Third Circuit has held that courts may exercise jurisdiction over non-forum defendants when the defendants "should reasonably anticipate being

haled into court" in that forum. *Dollar Sav. Bank v. First Security Bank of Utah*, 746 F.2d 208, 212 (3d Cir. 1984) (citing *World-Wide Volkswagen*, 444 U.S. at 297). The defendant must have purposefully directed its activities at the state and the case must arise out of or relate to at least one of those activities. *Watson v. Blessey Marine Servs.*, No. 11-cv-1252, 2011 U.S. Dist. LEXIS 135181, at *8 (W.D. Pa. Nov. 23, 2011) (citations and quotations omitted).

When those requirements are met, a court must also determine whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *Id.* (citations and quotations omitted). Physical entry into Pennsylvania is not required, though the defendant must deliberately target the forum with its activities in some manner. *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. Pa. 2007); *Thompson v. Wyrks Tool & Mach. Ltd.*, No. 09-581, 2009 U.S. Dist. LEXIS 117479, at *5 (W.D. Pa. Nov. 13, 2009) ("[E]ven a single purposeful contact may be sufficient to meet the minimum contacts standard when the underlying proceeding is directly related to that contact") (quoting *Application to Enforce Administrative Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996)).

1.    **UNITED'S WEBSITE IS COMMERCIALLY INTERACTIVE AND SPECIFICALLY TARGETS PENNSYLVANIA RESIDENTS.**

When the issue of personal jurisdiction concerns a defendant's commercially interactive website, if a defendant "either targets the website to the forum state,

and/or [is] knowingly conducting business with forum-state residents via the website, then the 'purposeful availment' requirement is satisfied." *Watson*, 2011 U.S. Dist. LEXIS 135181 at *8-9 (citing *Toys R Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 452 (3d Cir. 2003). When a defendant's contacts with the forum are Internet-based, courts in the Third Circuit generally follow the rule of *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F. Supp. 1119, 1122-23 (W.D. Pa. 1997), in which the Western District of Pennsylvania developed a "sliding scale" to evaluate those contacts. This Court has explained that in *Zippo*, the court held that at one end of this scale,

> If the defendant's web site allows it to "enter into contracts with residents of a foreign jurisdiction . . . involving the knowing and repeated transmission of computer files over the internet," then the site falls into the "commercial" category.

> Defendants who maintain a "commercial" web site may be expected to submit to the personal jurisdiction of courts within the forum state. At the other end of the scale are operators of passive web sites that simply make information available to any viewer who may be interested….

> "Interactive" web sites allow the exchange of information between a user and the host computer, and depending on the level of interactivity and the commercial nature of the exchange of information, personal jurisdiction may be proper.

*Surface Preparation Techs. v. Jamaco Indus.*, No. 1:11-CV-1978, 2012 U.S. Dist. LEXIS 50146 at *9-10 (M.D. Pa. Apr. 10, 2012) (quoting *Hershey Co. v. Pagosa Candy Co.*, 1:07-CV-1363, 2008 U.S. Dist. LEXIS 29410 at *10-11 (M.D. Pa.

Apr. 10, 2008)).   For those websites in the "interactive" category, "'something more' than simply having a website accessible to individuals in the forum state must be shown," which can be established if a defendant has "non-Internet contacts with the forum state, advertised in local publications, or had business records of sales in the state." *Id.* at *11 (citations and quotations omitted).

Although here Defendants have both Internet *and* non-Internet contacts, the Defendants' Internet contacts alone would be sufficient to establish personal jurisdiction in Pennsylvania. *See Hershey*, 2008 U.S. Dist. LEXIS 29410 at *11 ("Defendants who maintain a 'commercial' website may be expected to submit to the personal jurisdiction of courts within the forum state.").   And although Defendants admit only that Pennsylvania residents "can interact" with Defendants through United's website, it is reasonable to infer that with at least 5% of the Defendants' customers coming from Pennsylvania, (Br. at 30; Gomulka Decl. ¶10), that Pennsylvania customers *do* take advantage of those commercially interactive features.

Thus, on the *Zippo* scale of website interactivity, United's website falls into the "commercial" category, as it not only directly advertises its services to Pennsylvanians, but it even allows Pennsylvania patients to complete transactions through its website, www.uhs.net.   *See, e.g.*, *TRE Servs. v. United States Bellows, Inc.*, No. 2:12-cv-00663, 2012 U.S. Dist. LEXIS 96731, at *10-12 (W.D. Pa. July

12, 2012) (holding jurisdiction proper when defendant operated a commercially interactive website through which users could request quotes from defendant, and defendant would follow up with phone and e-mail communication.  Because users submitted identifying information during the interaction, defendant should have reasonably known it was dealing with Pennsylvania customers.).  Examples of the interactive features of United's Website include:

(a) online bill pay service for medical services;

(b) online donations service for UHSFI;

(c) online service to request direct phone calls or e-mails from registered nurses for healthcare-related questions;

(d) online service to request a healthcare appointment;

(e) online service to order prescription refills;

(f) online service to request medical records;

(g) online access to patient intake forms;

(h) online service to send cards to current patients;

(i) online service to contact United; and

(j) online service to request physical copies of physician directories.[10]

---

[10] *(a)* Dickinson Decl. Exh. 10; Boyd Decl. ¶3(b); *(b)* Boyd Decl. 3(c); *(c)* Dickinson Decl. Exh. 27; *(d)* Dickinson Decl. Exhs. 16-19; *(e)* Dickinson Decl. Exh. 15; *(f)* Dickinson Decl. Exh.15; *(g)* Boyd Decl. ¶3; Dickinson Decl. Exh. 13; *(h)* Boyd Decl. ¶3(d); *(i)* Dickinson Decl. Exh. 14; *(j)* Dickinson Decl. Exh. 18.

This long list of online services demonstrates the extent of commercial interactivity provided to Defendants' Pennsylvania customers through United's website. While these services may be ultimately funneled to one of the other Defendants' facilities for processing, they are all offered as services through United's website, under United's infringing logo and trademarks, without any indication to consumers that the services are controlled by any entity for which United is not directly responsible.

This level of interactivity alone provides more than sufficient contacts with Pennsylvania to establish personal jurisdiction over United. In a comparable case, *Watson v. Blessey Marine Servs.,* the Western District of Pennsylvania considered jurisdictional contacts associated with a defendant's website that allowed a Pennsylvania resident to apply for an online job posting. *See* 2011 U.S. Dist. LEXIS 135181 at *10. After receiving the plaintiff's application through the defendant's website, the defendant contacted the Pennsylvania resident by telephone to discuss possible employment and further communicated with the resident regarding travel to defendant's headquarters in a third jurisdiction. *Id.*

The *Watson* court reasoned that with these contacts alone, personal jurisdiction was proper because the defendant "knew or should have known" that its hiring and recruitment services were being "purposefully directed" at the forum. *Id.* at *10-12. *See also Musser's Inc. v. United States*, No. 10-4355, 2011 U.S.

23

Dist. LEXIS 109629, at *16-17 (E.D. Pa. Sept. 26, 2011) (finding sufficient jurisdictional contacts and stating that "[Defendant's] website does more than post information, or exchange information. Customers can place orders over the internet, pay for the products over the internet, and have those products delivered to the states in which they live.").

Although United does not deliver *products* to Pennsylvania residents, through its website it provides several *services*, many of which transact business (e.g., online bill pay, online donation services), and others offer *returned communications* from United or one of its subsidiary facilities.  As in the *Watson* and *Musser's* cases, and as more fully detailed *infra*, United specifically targets its advertising and website services to Pennsylvania residents.   In fact, United expressly limits certain services to residents of Pennsylvania and New York.  *See* Dickinson Decl. Exh. 7.  It therefore follows that United knows or should know that its services are being purposefully directed toward this forum.

## 2.  EACH DEFENDANT'S PURPOSEFULLY DIRECTED CONTACTS WITH PENNSYLVANIA ARE SUFFICIENT TO SUBJECT ALL DEFENDANTS TO JURISDICTION.

Moreover, *all* Defendants advertise their services through United's website. And as demonstrated in Section V.A., *supra*, the Defendants' additional contacts (including PHCI's regular business activities within the Commonwealth) are attributable to United as well.  However, additional evidence (available even

24

without the benefit of jurisdictional discovery) demonstrates that each individual defendant has purposefully directed contacts with Pennsylvania.

First, **<u>United</u>**, the owner of the United's Website and "umbrella corporation" overseeing the entire health system, directly advertises healthcare-related services to Pennsylvania residents, and by advertises the health system's service to the Northern Tier of Pennsylvania more generally. Dickinson Decl. Exh. 8 (promoting UHSHI's UHS Binghamton Hospital Cardiac Rehabilitation Program as having "provided service to thousands of residents in the Southern Tier of New York and Northern Pennsylvania"). For example, on its website United advertises a "Nurse Direct" service that is available only to certain "counties of New York and Pennsylvania." Dickinson Decl. Exh. 7. The website advertises and provides a toll-free number for Tioga County Pennsylvania residents to call a registered nurse within United's health system for detailed health information, physician referrals, and health program information, among other topics. *Id.* Further, Tioga County Pennsylvania residents may request that a nurse from United's health system call into the Commonwealth or e-mail that patient to discuss the patient's health-related information as well. *Id.*; Dickinson Decl. Exh. 27.

United also advertises its health system to Pennsylvania residents by boasting of its reach into the Northern Tier of Pennsylvania. In one statement on its website, United advertises that its "UHS Wilson Medical Center is the backbone

of UHS, the largest and most comprehensive health care organization in the Greater Binghamton area who's [sic] patient care coverage area encompasses all of Broome County and much of Central New York **and Northcentral Pennsylvania**." Dickinson Decl., Exh. 6.

Additionally, United[11] sponsors advertisements and television "Docs on Call" segments with WBNG-TV Action News, which "is the CBS affiliate for the Binghamton Television Market which serves the Southern Tier of New York State and the Northern Tier of Pennsylvania." Dickinson Decl. Exhs. 21 – 24, 28. This is but one example that calls into question Defendants' blanket statement that **None of the Defendants:…Advertise to Pennsylvania markets**. Br. p. 9 (emphasis in original). United posts several samples of its other television, radio, and print advertisements on its website.[12] Dickinson Decl. Exh. 31.

In addition to these substantial contacts and as demonstrated *supra*, under the alter ego theory, the contacts of the remaining Defendants should be imputed to United for the purposes of jurisdiction, specifically including PHCI, which regularly enters the Commonwealth to do business, and is registered to do business

---

[11] The television segments appear to be advertisements sponsored by United, as the language in the general information page, attached as Exhibits 23 and 24 to the Dickinson Declaration, applies to the entire health system, not merely UHSHI or any other individual Defendant.

[12] To the extent Defendants argue that their advertising into Pennsylvania is unintentional or not within their control, UHS should be entitled to jurisdictional discovery to show otherwise. This discovery would also reveal additional promotional efforts not posted on United's website.

in the forum as well.  Cerra Decl. ¶6.  Further, PHCI conducts its business and presents itself to Pennsylvania residents under the infringing "UHS" mark.  *See, e.g.*, Website advertising PHCI as "UHS Home Care."  Therefore, not only does PHCI knowingly provide healthcare services to Pennsylvania residents using the infringing UHS marks, but it even seeks out and treats those patients *within the forum*.[13]

Second, Defendants TTHHI, ISLCI, and ISLCHC advertise through United's website, which presents these entities, and itself, as a unified organization under the infringing "UHS" trademarks.

Third, in addition to advertising its services through United's website, DVHI's UHS Delaware Valley Hospital and UMA both provide facilities through which United's online services are offered, such as the Online Bill Pay service. *See* Dickinson Decl. Exh. 10.  Pennsylvania residents may also make online donations to UHSFI as well.  Boyd Decl. ¶3(c).

Finally, not only does UHSHI advertise its hospital and healthcare services through United's website, but it is through UHSHI's facilities that several United advertisements and services are directed specifically to Pennsylvania residents. For example, two of the facilities for which United offers its Online Bill Pay

---

[13] PHCI, as a part of the Defendants' unified "UHS" health system, regularly does business with Pennsylvania residents within the forum.  Throughout the "UHS" health system, there are shared marketing images and strategies, trademarks, employees, board members, officers, and sales systems.

services are UHS Binghamton General Hospital and UHS Wilson Medical Center, both operated by UHSHI.  *See* Dickinson Decl. Exh. 10.  UHSHI also owns the primary care clinics and hospital facilities through which many of United's remaining online services are provided, including the following: an online service to request a healthcare appointment; an online service to order prescription refills; an online service to send cards to current patients; an online service to request medical records; and an online access to patient intake forms.[14]  Therefore, UHSHI is an integral part of United's ability to offer its online services that directly target, transact business with, and interact with Pennsylvania residents.  Its contacts are certainly sufficient to establish personal jurisdiction within this forum.

Despite Defendants' arguments to the contrary, it is not merely the Defendants' health care services that are at issue before this Court, but Defendants' marketing of those services to patients within Pennsylvania.  Courts in the Third Circuit have recognized this basic distinction in prior cases.  *See Brownstein v. New York Univ. Medical Ctr.*, No. 94-907, 1994 U.S. Dist. LEXIS 16760, at *16-17 (D.N.J. Nov. 22, 1994) (Analyzing personal jurisdiction issues related to the "local nature" of medical services and stating that "Advertisements directed toward the patient's home jurisdiction will change the analysis").  Further, in *Schwilm v. Holbrook*, the court discussed the local nature of medical practice and stated that

---

[14] Dickinson Decl. Exh. 10; Boyd Decl. ¶3; Dickinson Decl. Exhs. 15-19, 32.

"this analysis obviously applies with much less force to a doctor serving a multistate metropolitan area, such as a Philadelphia physician who draws patients from the New Jersey suburbs." 661 F.2d 12, 15 n.4 (3d Cir. Pa. 1981). Here, Defendants operate as a "regional provider" of healthcare services, serving a multistate geographic area. Dickinson Decl. Exh. 4.

Defendants themselves admit that United's website is interactive, and they further list several elements of commercial interactivity available to its Pennsylvania patients. *See* Br. at 30. However, Defendants' entire argument regarding the location of their infringement in Section V.C.2. of their Brief is predicated on the assumption that United's website is "passive" on the *Zippo* sliding scale, and that the extent of its interactivity is the mere "posting of information on a website" and the "use of an alleged infringing mark on a website… by itself." Br. at 32-33. As demonstrated in Section V.B.1, *supra*, United's website is commercially interactive.

Further, Defendants' characterization of the *Molnlycke* and *Harlow* cases as supportive of their argument is misplaced. In *Molnlycke*, there was no evidence that the defendant's website targeted Pennsylvania. As demonstrated herein, not only does United's website target Pennsylvania, but it even expressly limits its advertising and availability of certain services to Pennsylvania and New York residents. *See, e.g.*, Dickinson Decl. Exh. 8.). Additionally, personal jurisdiction

in the *Harlow* case was alleged under a "stream of commerce" theory of personal jurisdiction, which has not been raised and is not at issue here. Thus, the dictum cited from that case is likewise inapplicable. Therefore Defendants have directed sufficient activities at Pennsylvania to be subject to jurisdiction in the Commonwealth.

## C. DEFENDANTS' CONTACTS WITH PENNSYLVANIA ARE CONTINUOUS AND SYSTEMATIC, SUCH THAT GENERAL PERSONAL JURISDICTION IS PROPER IN PENNSYLVANIA.

As to general jurisdiction, the Defendants' contacts with Pennsylvania, as demonstrated individually in Section V.B., *supra*, are regular and extensive. As such, and because United is the alter ego of the other Defendants, this Court properly has general jurisdiction over the Defendants. *See Surface Preparation Techs. v. Jamaco Indus.*, No. 1:11-CV-1978, 2012 U.S. Dist. LEXIS 50146 at *6-7 (M.D. Pa. Apr. 10, 2012) (stating that courts may exercise jurisdiction over defendants with "continuous and systematic" contacts to the forum).

As demonstrated in Section V.A., *supra*, even without the benefit of jurisdictional discovery, it is already apparent that Defendants' healthcare system has at least the following systematic contacts with the forum: (a) regularly interacting and transacting business with Pennsylvania residents through United's Website; (b) physically entering the forum to provide goods and services to Pennsylvania residents; (c) a license to transact business within Pennsylvania; (d)

advertising directed to Pennsylvania residents and advertising within Pennsylvania markets; (e) at least 5% of the entire health system's patients coming from Pennsylvania; (f) a program advertised to Pennsylvania residents, offering to call residents within their homes to provide healthcare and medical information, among others.

This multitude of contacts is further not a one-time event.  As Defendants have admitted, at least 5% of their patients (i.e. customers) are Pennsylvania residents, and Defendants are obviously seeking to serve many more.  *See TRE Servs. v. United States Bellows, Inc.*, No. 2:12-cv-00663, 2012 U.S. Dist. LEXIS 96731, at *12-13 (W.D. Pa. July 12, 2012) (rejecting defendant's argument that 2.1% of its revenue is not sufficient contact with the forum to establish jurisdiction when defendant operated a commercially interactive website and did business with Pennsylvania citizens).  As these contacts with the Commonwealth and its citizens are continuous and systematic, exercising personal jurisdiction over the defendants would be fair, reasonable, and just.

**D.   ASSERTING PERSONAL JURISDICTION OVER DEFENDANTS IN PENNSYLVANIA COMPORTS WITH TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.**

As Plaintiff has demonstrated herein, each Defendant maintains sufficient contacts with the forum to exercise personal jurisdiction over all Defendants, the burden now shifts to Defendants to "present a compelling case that the presence of

some other considerations would render jurisdiction unreasonable." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (explaining that the exercise of personal jurisdiction must also "comport[] with fair play and substantial justice.") (quoting 476 *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). The factors for determining reasonableness include "'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *Southco, Inc. v. Matdan Am. Corp.*, No. 98-5425, 1998 U.S. Dist. LEXIS 19416, at *20 (E.D. Pa. Dec. 8, 1998) (citation omitted). Further, "'when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the defendant.'" *Id.* Defendants have not met this burden.

The burden on the Defendants to litigate in this forum is limited at best. Defendants' principal places of business are just across the Pennsylvania border, such that its Pennsylvania patients regularly travel to Defendants' locations for treatment. *See* Gomulka Decl. ¶10 (citing five percent of UHS healthcare patients travel to Defendants' facilities). Its PHCI subsidiary also regularly enters the state to offer goods and services as well. Cerra Decl. ¶6 (stating that PHCI provides treatment and medical supplies to Pennsylvania patients in their homes). Further, as the consumer confusion resulting from Defendants' infringement significantly impacts Pennsylvania residents, it is in the Commonwealth's interest to protect its

citizens from such confusion. *See Aerolink Int'l v. Colonial Parking*, No. 96-1130, 1996 U.S. Dist. LEXIS 12430, at *9 (E.D. Pa. Aug. 21, 1996) (holding that defendants did not meet the "heavy burden" to show an absence of fairness or lack of substantial justice in part because "Pennsylvania clearly has an interest in protecting its residents from trademark infringement and resulting consumer confusion that may likely occur within its boundaries"). Further, the venue for this case is relatively close to Defendants' headquarters, such that it presents no burden to Defendants and its witnesses. *See id.* at *29 (holding that it is not "unfair or unjust" to require a corporate defendant to defendant to defend a trademark infringement lawsuit less than 150 miles away).

Thus, in addition to Plaintiff's interest in obtaining relief in the location where the infringement is occurring and harm is felt, Defendants' claims of any burden are not serious, not compelling, and do not satisfy Defendants' burden to demonstrate as much.

## VI. IN THE ALTERNATIVE, PLAINTIFF SHOULD BE ALLOWED JURISDICTIONAL DISCOVERY

With only public documents and Defendants' admissions available to Plaintiff, UHS has demonstrated that this Court has jurisdiction over each of the Defendants. However, to the extent that this Court lacks information material to its decision, Plaintiff respectfully suggests that this is due to Defendants' successful attempts to mask their activities directed to Pennsylvania and the full nature of

their integrated health system.  Though Plaintiff has presented more than sufficient

evidence to prove personal jurisdiction over the Defendants, if this Court

determines otherwise, Plaintiff respectfully requests that this Court grant Plaintiff

the ability to conduct jurisdictional discovery.  As the Third Circuit held in *Toys*

*"R" Us*,

> [C]ourts are to assist the plaintiff by allowing jurisdictional discovery
> unless the plaintiff's claim is ***clearly frivolous***.  If a plaintiff presents
> factual allegations that suggest with reasonable particularity the
> possible existence of the requisite contacts between the party and the
> forum state, the plaintiff's right to conduct jurisdictional discovery
> should be sustained.

*Toys "R" Us*, 318 F.3d at 456 (citations and quotations omitted) (emphasis added).

With this present Brief, Plaintiff has presented specific, particular facts

demonstrating personal jurisdiction over the Defendants.  *See  LG Elecs. USA, Inc.*

*v. Seamless Interactive, LLC*, No. 9-CV-5178, 2010 U.S. Dist. LEXIS 78157, at

*20-23 (D.N.J. Aug. 2, 2010) (granting jurisdictional discovery when the

defendant's website fell somewhere in the "middle ground" of the *Zippo* sliding

scale, and while there was no evidence of commercial interaction, the website did

"not merely present information, as the site prominently displays a 'Client Portal' –

through which existing customers can presumably log in.")  Here, it is clear that

the website *www.uhs.net* provides substantially more interactivity than the "mere

posting of information."  Plaintiff has also demonstrated that, similar to the *LG*

*Elecs. USA* case, the *www.ush.net* website offers several avenues of commercial

interactivity with the Defendants, including the online payment for medical services and Defendants' "MyUHS" online portal, through which Pennsylvania patients may exchange significant information with the Defendants.   Dickinson Decl. Exhs. 15-17.

As such, Plaintiff exceeds the "reasonable particularity" standard and it cannot be said that Plaintiff's claims are "clearly frivolous."   *See Thompson v. Wyrks Tool & Mach. Ltd.*, No. 09-581, 2009 U.S. Dist. LEXIS 117479, at *8-9 (W.D. Pa. Nov. 13, 2009) ("Plaintiff has requested jurisdictional discovery, moreover, and the Court should grant this request unless Plaintiff's claim is 'clearly frivolous.'") (citations omitted) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 336 (3d Cir. 2009).   Therefore, if the Court requires additional information to assert jurisdiction over the Defendants, UHS seeks to propound Interrogatories and Requests for Production and to take depositions of knowledgeable witnesses limited to its alter ego theory and Defendants' business in and contacts with Pennsylvania.

## VII.   <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendants' motion to dismiss for lack of personal jurisdiction.

Date: August 10, 2012

Respectfully Submitted,

By:  /s/ Thomas B. Schmidt III

Thomas B. Schmidt III (PA 19196)
Tucker R. Hull (PA 306426)
Pepper Hamilton LLP
100 Market Street - Suite 200
P. O. Box 1181
Harrisburg, PA 17108-1181
717.255.1164 (direct)
717.238.0575 (fax)
schmidtt@pepperlaw.com

Robert C. Van Arnam (NC 28838)
Williams Mullen, P.C.
301 Fayetteville Street
Suite 1700
Raleigh, North Carolina 27601
919.981.4000 (direct)
919.981.4300 (fax)
rvanarnam@williamsmullen.com
(*Pro Hoc Vice*)
William P. Dickinson, III (VA 80298)
Williams Mullen, P.C.
200 South 10th Street, Suite 1600
Richmond, Virginia 23219
804.420.6607 (direct)
804.420.6507 (fax)
wdickinson@williamsmullen.com
(*Pro Hoc Vice*)
*Counsel for UHS of Delaware, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UHS OF DELAWARE, INC.** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) **Case No. 1:12-cv-00485** |
| **v.** | ) |
| | ) |
| **UNITED HEALTH SERVICES, INC.,** | ) **The Honorable Christopher** |
| *et al.* | ) **C. Conner** |
|     **Defendants.** | ) |

## CERTIFICATE OF WORD COUNT

I hereby certify that this brief complies with the type volume limitation contained in Local Rule 7.8 and this Court's June 21, 2012 Order (Dkt. No. 20), granting a joint motion and giving the parties leave to file briefs supporting and opposing motions to dismiss in excess of 5,000 words, not to exceed 8,000 words. The undersigned hereby certifies that this brief contains 7,769 words, which is less than the 8,000 allowed. This certification is based upon the word processing system used to prepare this brief.

By: _ /s/ Thomas B. Schmidt III_____
Thomas B. Schmidt III
*Counsel for Plaintiff UHS of Delaware, Inc.*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UHS OF DELAWARE, INC.** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No. <u>1:12-cv-00485</u>** |
| **v.** | ) |
| | ) |
| **UNITED HEALTH SERVICES, INC.,** | ) **The Honorable Christopher** |
| *et al.* | ) **C. Conner** |
| **Defendants.** | ) |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 10th day of August, 2012, I electronically filed the foregoing Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss the Second Amended Complaint for Lack of Personal Jurisdiction with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Allen C. Warshaw
Rhoads & Sinon LLP
One South Market Square, 12th Floor
Harrisburg, PA 17108-1146
717-237-6768
717-238-8623 (fax)
awarshaw@rhoads-sinon.com

Robert A Gutkin
Andrews Kurth LLP
1350 I Street NW
Suite 1100
Washington, DC 20005

202 662-2785
Email: robertgutkin@andrewskurth.com
*Counsel for Defendants*

By: /s/ *Thomas B. Schmidt III*
        Thomas B. Schmidt III
        *Counsel for Plaintiff UHS of Delaware, Inc.*