**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UHS OF DELAWARE, INC.,** | : | **CIVIL ACTION NO. 1:12-CV-485** |
| | : | |
| **Plaintiff** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED HEALTH SERVICES,** | : | |
| **INC.,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

The instant matter arises from a trademark dispute between plaintiff UHS of Delaware, Inc. ("UHS Delaware") and defendants United Health Services, Inc., ("United Health Services"), United Health Services Hospitals, Inc., Professional Home Care, Inc., Twin Tier Home Health, Inc., Ideal Senior Living Center, Inc., Ideal Senior Living Center Housing Corporation, Delaware Valley Hospital, Inc., and United Medical Associates.  Presently before the court is UHS Delaware's motion (Doc. 125) to dismiss Counts I, II, and III of the counterclaim.

**I.    <u>Factual Background and Procedural History</u>**[1]

UHS Delaware commenced this action with the filing of a complaint (Doc. 1) on March 16, 2012, subsequently filing an amended complaint (Doc. 9) on April 26, 2012, and a second amended complaint (Doc. 14-3) on June 5, 2012.  Therein, UHS Delaware asserts trademark infringement and unfair competition claims under

---

[1] In accordance with the standard of review for a Rule 12(b)(6) motion to dismiss, the court will "accept all well-pleaded facts in the complaint as true and view them in the light most favorable" to United Health Services.  <u>Carino v. Stefan</u>, 376 F.3d 156, 159 (3d Cir. 2004).

state and federal statutes. UHS Delaware alleges that it owns a federal registration for the word mark "UHS" assigned Registration No. 1,696,433 ("the '433 mark"), and for the stylized logo mark "UHS" assigned Registration No. 2,741,663 ("the '663 mark"). (Doc. 14-3 ¶¶ 21-22; Doc. 114 ¶¶ 21-22). UHS Delaware avers that defendants' recent rebranding initiative involving a similar mark and logo infringes upon its federally registered trademark rights.

United Health Services is the parent corporation of a health care delivery system comprised of the collective defendants. (Doc. 114 ¶¶ 152, 154-59). United Health Services asserts a number of counterclaims against UHS Delaware, specifically seeking cancellation of both the '433 and '663 marks in Counts I, II, and III. According to United Health Services, its health care system provides hospital services in the southern tier of New York and has provided such services under the word mark "UHS" since the 1980s. (See id. ¶ 166). United Health Services alleges that it possesses common law ownership rights to the UHS word mark and that its rights are superior to and predate UHS Delaware's federal registrations. (See id. at 6, ¶¶ 192, 199). Central to its cancellation claims, United Health Services contends that UHS Delaware knew of its prior use of, and superior rights to, the subject marks at the time that UHS Delaware applied for federal registrations. (See id. ¶¶ 185-86, 192, 199). United Health Services also asserts that UHS Delaware did not use the UHS word mark in commerce prior to its application for or the registration of the '433 word mark. (See id. ¶¶ 176-79). United Health Services maintains that UHS Delaware misrepresented this information for the purpose of obtaining federal registrations to which it was not lawfully entitled. (Id. ¶¶ 192(d), 199(d)). In Counts

IV and V, United Health Services seeks a declaratory judgment that it has common law rights to the '433 word mark and that UHS Delaware has no rights in the word mark for use in the medical equipment rental business.  (Id. ¶¶ 201-25).

UHS Delaware responded to United Health Services' counterclaims with the instant motion (Doc. 125) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  UHS Delaware seeks dismissal of Counts I, II, and III of United Health Services' counterclaim, or alternatively, a more definite statement.  The motion is fully briefed and ripe for disposition.

## II.   **Standard of Review**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' "  Id. at 130 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next,

the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded. Id. at 131; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts should grant leave to amend before dismissing a curable pleading in civil rights actions. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Courts need not grant leave to amend *sua sponte* in dismissing non-civil rights claims pursuant to Rule 12(b)(6), Fletcher-Harlee Corp., 482 F.3d at 251, but leave is broadly encouraged "when justice so requires." FED. R. CIV. P. 15(a)(2).

## III.  Discussion

United Health Services seeks cancellation of both the '433 word mark and the '663 stylized mark. In Count I, United Health Services asserts that the '433 word mark is void *ab initio* because it was not used in commerce by UHS Delaware before its application or registration date. In Counts II and III, United Health Services asserts that the '433 word mark and the '663 stylized mark are cancellable because UHS Delaware did not disclose known users with superior rights to the

subject marks to the United States Patent and Trademark Office.  UHS Delaware responds that neither failure to use nor failure to disclose is a cognizable ground for cancellation of an incontestable mark.  UHS Delaware further contends that, to the extent United Health Services attempts to assert a cancellation claim for fraud in procurement of the marks, it fails to satisfy the heightened pleading standard for fraud claims set forth in Federal Rule of Criminal Procedure 9(b).

The Lanham Act authorizes federal courts to "determine the right to registration, order the cancellation of registrations, . . . and otherwise rectify the register with respect to the registrations of any party to the action."  15 U.S.C. § 1119.  Once a mark becomes incontestable, however, the registration becomes "conclusive evidence of the registrant's exclusive right to use the mark, subject to the conditions of" § 1065, regarding incontestability, and § 1115(b)(1), enumerating nine grounds for cancellation of an incontestable mark.  <u>Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.</u>, 469 U.S. 189, 196 (1985); <u>see</u> <u>also</u> 15 U.S.C. §§ 1065, 1115(b); 3 J. THOMAS MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 20:55 (4th ed. 2015) (herein "MCCARTHY").  The instant motion raises two issues derivative of these general principles: first, whether the registrations have become incontestable and, second, whether United Health Services has sufficiently pled a claim of fraud in the procurement of either or both of the registrations.  The court will address these inquiries *seriatim*.

### A.    Incontestability

A registered trademark becomes incontestable when its owner files an affidavit with the Director of the United States Patent and Trademark Office

attesting "that the mark has been registered, that it has been in continuous use for five consecutive years, and that there is no pending proceeding and there has been no adverse decision concerning the registrant's ownership or right to registration." Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 n.7 (3d Cir. 1994) (citing 15 U.S.C. §§ 1058, 1065).  Incontestability is not automatic; the protective status is contingent upon the registrant's filing of an affidavit of incontestability. See 15 U.S.C. § 1065(c); see also United States Soo Bahk Do Moo Duk Kwan Fed'n, Inc. v. Tang Soo Karate School, No. 3:12-CV-669, 2015 WL 4920306, at *20 (M.D. Pa. Aug. 17, 2015) (Mariani, J.).  In other words, five years' of consecutive use and "compliance with statutory formalities" will render a registration incontestable. 2 MCCARTHY § 15:35; see also 15 U.S.C. § 1065.

        In Count I of its counterclaim, United Health Services asserts a claim for cancellation of the '433 mark on the ground that the mark is void *ab initio* for UHS Delaware's failure to use it in commerce prior to registration.  (Doc. 114 ¶¶ 174-80). UHS Delaware answers that the '433 mark is federally registered, that its compliance with the requirements of 15 U.S.C. § 1065 renders the mark incontestable, and that "failure to use" is not a defense against an incontestable mark.  (See Doc. 126 at 7-10; see also Doc. 14-3 ¶¶ 21-22, 48, 72).  United Health Services does not challenge UHS Delaware's compliance with the requirements of § 1065.  (See Doc. 130 at 9-15).  Rather, United Health Services appears to argue that a mark cannot become incontestable in the first instance when its registrant failed to use the mark in commerce prior to registration.  (See id. at 7-15).

United Health Services relies on <u>NetJets, Inc. v. Intellijet Group, LLC</u>, No. 2:12-CV-69, 2013 WL 5675464 (S.D. Ohio Oct. 17, 2013) as support for its position. (<u>See</u> <u>id.</u> at 7-15).  In <u>NetJets</u>, infringement defendant Intellijet sought to amend its pleading to include a claim for cancellation mirroring Count I of United Health Services' counterclaim *sub judice*, to wit: that a registration was void *ab initio* for failure to use the mark prior to registration.  A magistrate judge denied Intellijet's motion, concluding that the subject mark was incontestable and that "failure to use" and "void *ab initio*" are not enumerated bases for cancelling incontestable marks.  <u>See</u> <u>id.</u> at *2.  Intellijet objected to the magistrate judge's order and filed a motion for reconsideration with the district court judge.  <u>See</u> <u>id.</u>  On appeal, the district court agreed with Intellijet and allowed amendment.  <u>Id.</u>

Regarding incontestability, the district court grounded its ruling in a literal reading of the Supreme Court's decision in <u>Park 'N Fly</u>.  The Court in <u>Park 'N Fly</u> observed that incontestable status is "conclusive evidence of the registrant's right to use the mark, subject to the conditions of [§ 1065] *and* the . . . defenses enumerated in [§ 1115(b)] itself."  <u>Park 'N Fly</u>, 469 U.S. at 196 (emphasis added).  The district court in <u>NetJets</u> construed this conjunctive language to mandate a threshold judicial assessment of a registrant's compliance with § 1065 before designating a mark incontestable.  <u>See</u> <u>NetJets</u>, 2013 WL 5675464, at *3.  Intellijet's proposed amended counterclaim alleged that NetJets had not satisfied the continuous use requirement of § 1065; consequently, the court held that Intellijet had stated a viable claim challenging incontestability status.  <u>See</u> <u>id.</u>  The court further opined that even if the mark was incontestable, Intellijet had sufficiently pled fraud in the

procurement on the basis of fraudulent representations of use in the initial

registration application.  See id. at *3-6.

The NetJets court did not hold, as United Health Services suggests, that an

incontestable mark may be cancelled on the basis of a defense not enumerated in

§ 1115(b), or that "failure to use" a mark is a defense contemplated by the statute.

Rather, the court held that a defendant charged with infringement may assert in a

counterclaim that the mark never attained incontestable status in the first instance,

by virtue of noncompliance with the requirements of § 1065.  See NetJets, 2013 WL

5675464, at *3.  The NetJets court characterized Intellijet's proposed claim as

alleging "that NetJets failed to obtain incontestability status in the first place,"

casting its primary inquiry as whether NetJets satisfied "an element of § 1065

itself."  Id.  Hence, to the extent that United Health Services cites NetJets for the

proposition that failure to use a mark is a basis for cancellation under § 1115(b)(1),

the court must disagree.  This construction conflates NetJets' two holdings: first,

that a reviewing court must independently assess a plaintiff's allegation that a mark

is incontestable, and separately, that a mark which is incontestable may be subject

to cancellation if the registrant fraudulently misrepresents its use of the mark in its

registration application.  See id. at *3-7.

An important component of the NetJets analysis was Intellijet's express

allegation that NetJets had failed to comply with the requirements of § 1065.  See

NetJets, 2013 WL 5675464, at *3.  The court permitted Intellijet to amend its

counterclaim because Intellijet had pled facts establishing NetJets' failure to satisfy

the continuous use requirement of § 1065.  See id.  United Health Services does not

plead any such deficiency in UHS Delaware's asserted incontestability status. United Health Services instead moors its claim in UHS Delaware's purported failure to use the mark in commerce prior to its registration application, (see Doc. 114 ¶¶ 176-80; see also Doc. 130 at 11), which is appropriately construed as a fraud in the procurement claim pursuant to 15 U.S.C. § 1115(b)(1). See NetJets, 2013 WL 5676465, at *3-7. The court will dismiss Count I of United Health Services' counterclaim to the extent that count attempts to state a void *ab initio* challenge to the incontestable '433 registration.

### B.   Fraud in Procurement of Registration

Section 1115(b) enumerates nine "defenses or defects" to which an incontestable registration is subject. 15 U.S.C. § 1115(b). The first, that "the registration or the incontestable right to use the mark was obtained fraudulently," 15 U.S.C. § 1115(b)(1), is the only basis for cancellation ostensibly applicable. United Health Services does not label its counterclaims as fraudulent procurement claims pursuant to § 1115(b)(1). Nonetheless, United Health Services claims that UHS Delaware misrepresented and did not disclose material facts in its applications to register the '433 and '633 marks. Its allegations are consistent with a legal theory of fraud. The court construes Counts I, II, and III as claims for fraud in the procurement and will analyze them through the prism of § 1115(b)(1).

A finding of fraud in procuring a registration requires proof of the following elements: (1) the challenged representation was a false statement of material fact; (2) the person making the representation knew of its falsity; (3) the person making the representation did so with an intent to deceive; (4) the patent and trademark

9

office relied on the representation; and (5) damage resulted from such reliance.
See Primepoint LLC v. PrimePay, Inc., 545 F. Supp. 2d 426, 446-47 (D.N.J. 2008)
(quoting Le Cena Fine Foods, Ltd. v. Jennifer Fine Foods, No. 01-CV-5746, 2006 WL
2014503, at *4 (D.N.J. July 18, 2006)); see also 6 MCCARTHY § 31:61.  UHS Delaware
contends that United Health Services' pleading fails to allege each of these elements
"with particularity" as required by Federal Rule of Civil Procedure 9(b).  See FED.
R. CIV. P. 9(b).  UHS Delaware also asserts that failure to use does not constitute
fraudulent procurement and that a registration applicant has no duty to disclose
known inferior uses of its mark.  (See Doc. 126 at 5-14).  The court first addresses
UHS Delaware's use and disclosure arguments before turning to the sufficiency of
the counterclaims measured against Rule 9(b).

> ### 1.  *Failure to Use*

UHS Delaware contends that "failure to use" is not an authorized basis for
cancellation of an incontestable trademark.  (Doc. 126 at 5-7; Doc. 131 at 3-5).  As
noted, § 1115(b)(1) does not list "failure to use" as a statutory basis for challenging
an incontestable mark.  See 15 U.S.C. § 1115(b)(1).  At least two courts have rejected
stand-alone cancellation claims premised on an alleged failure to use the mark.
See, e.g., Ferring B.V. v. Fera Pharm., LLC, No. 13-4640, 2014 WL 4829053 (E.D.N.Y.
Aug. 13, 2014), report and recommendation adopted by 2014 WL 4829458 (E.D.N.Y.
Sept. 29, 2014); Collectable Promotional Prods., Inc. v. Disney Enters., Inc., No. CIV-
06-1187, 2009 WL 1543449, at *7-8 (W.D. Okla. 2009).  The court's research reveals no
judicial decision authorizing an independent cause of action on a failure to use
theory.  Hence, the court agrees with UHS Delaware that a registration's

incontestable status "forecloses a challenge to the registration as void *ab initio* because there was no use prior to registration." 3 MCCARTHY § 32:148.

The court rejects, however, any contention that alleged failure to use cannot inform a fraudulent procurement analysis. Several courts have held that misrepresentations regarding use of a mark may undergird a fraudulent procurement claim. In <u>Collectable Promotional Products</u>, for example, the District Court for the Western District of Oklahoma observed that "cancellation could arguably be sought on the grounds that [a registrant] fraudulently misrepresented the date of use . . . in its trademark application." <u>Collectable Promotional Prods.</u>, 2009 WL 1543449, at *8. Similarly, the <u>NetJets</u> court construed a proposed void *ab initio* claim as one for fraudulent procurement, noting that "[i]n essence, Intellijet *is* arguing that NetJets registration was obtained fraudulently" because NetJets allegedly "made a false statement in its registration application when it stated that the mark was used in interstate commerce." <u>NetJets</u>, 2013 WL 5675464, at *5-6. The court holds that, subject to satisfaction of the *prima facie* elements of a fraud claim, an applicant's misrepresentations concerning the use of a mark may provide the basis of a § 1115(b)(1) claim.

### 2. *Failure to Disclose*

UHS Delaware also contends that a registrant's failure to disclose prior uses of a similar mark is not a basis for cancellation if the subject mark has become incontestable. (<u>See</u> Doc. 126 at 11-14; Doc. 131 at 8-9). UHS Delaware cites *McCarthy on Trademarks* for its proposition that "such charges . . . have uniformly been rejected." 6 MCCARTHY § 31:75. A number of district courts have reached the

same conclusion: that unwitting failure to disclose use of a similar mark will not suffice to state a fraudulent procurement claim. See, e.g., Pandora Jewelers 1995, Inc. v. Pandora Jewelry, LLC, No. 09-CV-61490, 2011 WL 2174012, at *13-14 (S.D. Fla. June 2, 2011); Whirlpool Props., Inc. v. LG Electronics U.S.A., Inc., No. 1:03-CV-414, 2005 WL 3088339, at *25 (W.D. Mich. Nov. 17, 2005); ISP.Net, LLC v. Qwest Commc'ns Int'l, Inc., No. 01-0480, 2003 WL 21254430, at *4-5 (S.D. Ind. May 27, 2003).  As one court observed, such claims "presuppose a duty that the law does not recognize" because the "registration applicant has no duty to investigate and report to the PTO all other possible users of the same or similar mark." Whirlpool Props., 2005 WL 3088339, at *25.

It is true that an applicant has no duty to disclose every known use of its mark. See 6 McCarthy § 31:75.  However, as McCarthy notes, a § 1115(b)(1) cause of action does exist for intentional failure to disclose superior uses of a mark. See 6 McCarthy § 31:75.  Several district courts and the United States Trademark Board have held that the Lanham Act contemplates such a claim. See, e.g., Scooter Store, Inc. v. SpinLife.com, LLC, 777 F. Supp. 2d 1102, 1110-12 (S.D. Oh. Apr. 18, 2011); Whirlpool Props., 2005 WL 3088339, at *25; Ohio State Univ. v. Ohio Univ., 51 U.S.P.Q.2d 1289, 1293 (T.T.A.B. 1999); Intellimedia Sports, Inc. v. Intellimedia Corp., 43 U.S.P.Q.2d 1203, 1206 (T.T.A.B. 1997).  To prevail, the party claiming that the applicant's oath or declaration was fraudulent must allege with particularity that:

(1)     there was in fact another use of the same or a confusingly similar mark at the time the oath was signed;

(2)     the other user had legal rights superior to applicant's rights;

(3)     applicant knew that the other user had rights in the mark
        superior to applicant's, and either believed that a likelihood
        of confusion would result from applicant's use of its mark or
        had no reasonable basis for believing otherwise; and

(4)     applicant, in failing to disclose these facts to the Patent and
        Trademark Office, intended to procure a registration to
        which applicant was not entitled.

6 MCCARTHY § 31:75 (quoting Qualcomm Inc. v. FLO Corp., 93 U.S.P.Q.2d 1768,

1768 (T.T.A.B. 2010); Ohio State Univ., 51 U.S.P.Q.2d at 1293; Intellimedia Sports,

43 U.S.P.Q.2d at 1206).  An applicant cannot be liable for fraudulent procurement

if, at the time of the oath, the applicant "ha[d] a good-faith belief that it is the senior

user" of the mark.  Whirlpool, 2005 WL 3088339, at *25 (quoting 6 MCCARTHY

§ 31:77).  In other words, to support such a fraud claim, "a challenging party must

adduce evidence that the registrant *actually knew or believed* that someone else had

a right to the mark."  Marshak v. Treadwell, 240 F.3d 184, 196-97 & n.8 (3d Cir. 2001)

(emphasis added).

UHS Delaware acknowledges that intentional failure to disclose superior

rights to a mark is a valid basis for cancellation but maintains that only a "rare

circumstance" will satisfy the stringent pleading and proof standards.  (Doc. 126 at

12 (quoting Whirlpool, 2005 WL 3088339, at *25)).  Hence, the court's central inquiry

is not whether the Lanham Act contemplates liability for failure to disclose known

and superior rights, but whether United Health Services pleads sufficient facts to

substantiate that claim.

### 3.     *Sufficiency of the Pleadings*

UHS Delaware's final salvo tests the sufficiency of United Health Services'

allegations against the governing standards identified *supra* and the particularity in

pleading requirement of Federal Rule of Civil Procedure Rule 9(b).  Rule 9(b) mandates that a party alleging fraud or mistake "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).  UHS Delaware maintains that United Health Services fails to satisfy this heightened standard, attacking both the sufficiency of United Health Services' factual allegations and its use of "upon information and belief" pleading.  (Doc. 126 at 9-14; Doc. 131 at 5-8).

The challenging party in fraudulent procurement actions "bears a heavy burden of proof."  In re Bose Corp., 580 F.3d 1240, 1243 (Fed. Cir. 2009); Tang Soo Karate School, 2015 WL 4920306, at *29; Muhlenberg Coll. v. Sportswear, Inc., No. 13-7197, 2015 WL 713842, at *2 (E.D. Pa. Feb. 19, 2015).  A fraudulent procurement charge must "be proven 'to the hilt' with clear and convincing evidence."  In re Bose, 580 F.3d at 1243 (quoting Smith Int'l, Inc. v. Olin Corp., 209 U.S.P.Q. 1033, 1044 (T.T.A.B. 1981)).  At the motion to dismiss stage, the heightened Rule 9(b) standard requires a challenging party to allege particular facts establishing "the 'who, what, when, where[,] and how' of the events" constituting the fraud.  In re Rockefeller Ctr. Props., Inc. Sec. Litig., 311 F.3d 198, 217 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1422 (3d Cir. 1997)).

United Health Services' counterclaims fall well short of Rule 9(b)'s pleading requirement.  Count I asserts only that the '433 word mark "had not been used" by UHS Delaware prior to its application in May of 1991 or its registration in June of 1992.  (Doc. 114 ¶¶ 176-77).  United Health Services' pleading does not delineate any false statement made by UHS Delaware, nor does it establish requisite subjective intent to deceive.  (See id. ¶¶ 176-79).  Counts II and III allege only that UHS

14

Delaware was aware of simultaneous and similar uses of the word mark and one prior use of a similar stylized mark.  (See id. ¶¶ 183-91; 196-98).  United Health Services asserts in conclusory fashion that each prior user had "legal rights superior to" UHS Delaware's rights, without establishing bases for the asserted superiority or UHS Delaware's knowledge of the allegedly superior rights.  (See id. ¶¶ 192(a), 199(a)).  At their core, United Health Services' challenged counts are little more than formulaic recitations.  (See id. ¶¶ 192, 199).

This factual deficiency is compounded by the counterclaim's reliance on the catch phrase "upon information and belief."  (Doc. 114 ¶¶ 168-72, 176-79, 185-86, 189-92, 196-99).  Courts within this circuit consistently hold that pleadings based on "information and belief" are insufficient to satisfy the Rule 9(b) particularity requirement.  See, e.g., Zavala v. Wal-Mart Stores, Inc., 393 F. Supp. 2d 295, 313-14 (D.N.J. 2005); Toner v. Allstate Ins. Co., 821 F. Supp. 276, 285 (D. Del. 1993); Kimmel v. Peterson, 565 F. Supp. 475, 482 (E.D. Pa. 1983); see also 2A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 9.03[g] (3d ed. 2015).  UHS Delaware correctly observes that such allegations satisfy Rule 9(b) "only if the pleading sets forth specific facts upon which the belief is reasonably based."  Rapid Models & Prototypes, Inc. v. Innovated Solutions, 71 F. Supp. 3d 492, 504 n.7 (D.N.J. 2014); see also Kimmel, 565 F. Supp. at 482.  United Health Services offers no such foundation for its allegations made upon information and belief.

The Third Circuit Court of Appeals recognizes that strict application of Rule 9(b)'s particularity requirement may allow "sophisticated defrauders to successfully conceal the details of their fraud."  Craftmatic Sec. Litig. v. Kraftsow, 890 F.2d 628,

645 (3d Cir. 1989); see also In re Burlington, 114 F.3d at 1418 (quoting Shapiro v. UJB Fin. Corp., 964 F.2d 272, 284-85 (3d Cir. 1992)).  In Craftmatic, the Third Circuit panel adopted a "relaxed" Rule 9(b) pleading standard when a plaintiff asserts that information necessary to particularize its pleading is exclusively within the control and knowledge of the alleged defrauder.  Craftmatic, 890 F.2d at 645.  However, even under this "relaxed" standard, conclusory assertions will not suffice.  See In re Burlington, 114 F.3d at 1418 (citing Shapiro, 964 F.2d at 285); Zavala, 393 F. Supp. 2d at 314.  A party must still identify facts supporting its belief and "set forth 'the nature and scope of [its] efforts to obtain, before filing [its pleading], the information needed to plead with particularity."  Zavala, 393 F. Supp. 2d at 314 (quoting In re Am. Travellers Corp. Sec. Litig., 806 F. Supp. 547, 554 (E.D. Pa. 1992)).  Although Craftmatic and its progeny are securities fraud cases and their holdings have since been codified in the Private Securities Litigation Reform Act, see 15 U.S.C. § 78u-4(b)(1)(B), courts routinely apply their standards to other fraud claims.  See, e.g., Rapid Models & Prototypes, 71 F. Supp. 3d at 504 n.7; Zavala, 393 F. Supp. 2d at 314.

**IV.** **Conclusion**

The court concludes that United Health Services' counterclaims fail to survive Rule 9(b) scrutiny. The court will grant UHS Delaware's motion to dismiss Counts I, II, and III of United Health Services' counterclaim. Dismissal will be without prejudice to the right of United Health Services to amend its pleading to attempt to cure the deficiencies identified herein. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:    November 19, 2015